

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | | |
|---|---|---|
| DANA O'QUINN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:13-CV-471 |
| | § | |
| GENERAL STAR INDEMNITY | § | |
| COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

# MEMORANDUM OPINION AND ORDER
# ON MOTIONS FOR SUMMARY JUDGMENT

Pursuant to 28 U.S.C. § 636(c), the Local Rules for the United States District Court for the Eastern District of Texas, and the consent of the parties, this case is before undersigned United States Magistrate Judge, at Beaumont, Texas, for all matters, including trial and entry of judgment. Pending before the court are the defendant's two motions for summary judgment, *Traditional Motion for Summary Judgment* (doc. #23) and *No-Evidence Motion for Summary Judgment* (doc. #17).

In the interest of efficiency, the Court will address both motions in one order. The Court first resolves the defendant's *No-Evidence Motion for Summary Judgment*, followed by the *Traditional Motion for Summary Judgment.*

## I. Background

A. Plaintiff's Claims

On July 24, 2013, the plaintiff, Danna O'Quinn, ("plaintiff" or "O'Quinn") filed her Original Petition in the 136th Judicial District Court of Jefferson County, Texas, against defendant General Star Indemnity Company ("defendant" or "General Star"). *See Plaintiff's Original Petition and Notice of Removal* (doc #1-4). In the Original Petition, plaintiff states that she purchased insurance from defendant to insure her property, Alibi's, a nightclub and restaurant, located in Jefferson County, Texas. *See Original Petition*, at p. 2. On July 4, 2011, a fire significantly damaged the insured property. *Id*. O'Quinn filed an insurance claim on the property. She contends that General Star has made some payment, but has refused to pay "certain depreciation losses, omitted and underpaid some items." *Id*. Plaintiff also states in the Original Petition that the defendant improperly calculated the damages from the property. *Id*. at 3. Plaintiff alleges that General Star has not attempted in good faith "to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear." *Id*. Plaintiff also contends that General Star was negligent in "omitting line items for payment, under pricing items, and omitting depreciation entries." *Id.* Based on these allegations, the plaintiff asserts causes of actions for negligence; breach of contract; breach of implied covenant of good faith and fair dealings; and violations of Section 542.003, 542.058 and 542.060 of the Texas Insurance Code.

B. Factual Background and Summary Judgment Evidence

The evidence submitted with the parties' briefs sets forth the following background information. On January 22, 2004, O'Quinn's husband Brian O'Quinn filed the Articles of Incorporation for Cahoots Entertainment, Inc. ("Cahoots"). *See Defendant's No-Evidence Motion*

*for Summary Judgment* (doc #17, p. 1). Brian O'Quinn, as President and Director of Cahoots, executed a Lease Agreement with landlord Wallace Debes and signed a promissory note for $355,000.00. *Id*. at 2. Plaintiff's name was absent from these agreements, but O'Quinn completed an insurance application from General Star that represented she was the owner of the property. *Id*. This policy provided coverage for a Replacement Cost of $400,000 and coverage for Business Personal Property of $300,000. *See Commercial Property Coverage Part Declarations* (Exhibit #3 to the Motion for Summary Judgment).

The abovementioned fire on July 4, 2011, caused significant damage to Alibi's. On January 3, 2012, General Star presented O'Quinn with a Sworn Statement of Proof of Loss seven months after the fire. *See Plaintiff's Response to Defendant's Traditional Motion for Summary Judgment* (doc #28, p.1). On January 4, 2012, O'Quinn sent a letter to General Star with changes and stipulating that she was reserving her right to make a claim for additional damages. *See Letter, Exhibit 2 to Plaintiff's Response to Defendant's Traditional Motion for Summary Judgment* (doc # 28-2).

On February 15, 2012, O'Quinn signed a Policyholder's Property Damage Release that stated she accepted the settlement of all claims, but reserved the right to pursue "a supplemental claim for additional damages, if discovered, and to review and revisit the depreciation calculation." *See Plaintiff's Response,* at p.1. General Star issued a final payment of $429,211.93. *See Defendant's Traditional Motion for Summary Judgment* (doc #23, p.2). These payments were made in accordance with provisions of the policy and in compliance with Actual Cash Value ("ACV"), which depreciated the property. *Id*. For O'Quinn to recover the depreciation, she would have to make repairs to the property to receive the Replacement Cost Value ("RCV") of the property. *Id*. at 3. On February 6,

2013, O'Quinn filed a supplemental claim for additional damages and asserted the claims discussed herein. *Id.* at 2.

## II. Discussion: No-Evidence Motion for Summary Judgment

A. Defendant's Motion for No-Evidence Summary Judgment and Related Briefs

The defendant urges that summary judgment is warranted due to a lack of evidence. General Star argues that O'Quinn has no insurable interest in the property, has not shown any evidence of an interest in the property, and therefore, cannot recover under an insurance policy. *See Defendant's No-Evidence Motion for Summary Judgment* (doc #17, p. 3).

In her response, O'Quinn contends she has managed the club with her husband and that the club is the primary source of income for her family. *See Plaintiff's Response to Defendant's Motion for Summary Judgment* (doc #19, p.4). O'Quinn argues that she has community property in Cahoots and that General Star overlooks Texas law allowing a wife the ability to purchase insurance on a husband's property even if she is not a leasehold owner. *Id.* at 5. Furthermore, O'Quinn argues that General Star has acknowledged O'Quinn has insurable interest in the property because it paid her substantial money for the fire loss under the policy. *Id.* at 8.

The defendant filed a reply in support of its motion for summary judgment. *See Reply Brief* (doc #17). General Star reasserts its argument that O'Quinn has no insurable interest in the property. *Id.* at 4. General Star contends that Cahoots is the corporation that derives an insurable interest in the property because it was the party that signed the lease agreement, obtained the promissory note and derived a pecuniary benefit from the existence of the property. *Id.* Moreover, General Star argues that O'Quinn has no evidence of an insurable interest as she did not expend any personal funds, was not a tenant or suffer any personal loss. *Id.* Furthermore, General Star claims that if there was

4

evidence, it would have been uncovered already because of the extensive discovery that has taken place. *Id.* at 4.

    B.  Summary Judgment Standard of Review

Federal rules govern procedural requirements for motions for summary judgment filed in federal cases, irrespective of the basis for the court's jurisdiction. *See Doe v. Doe*, 941 F.2d 280, 287 (5th Cir. 1991). Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548, 91 L. Ed.2d 265(1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). An issue is *genuine* if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986). A fact is material when it is relevant or necessary to the ultimate conclusion of the case. 477 U.S. at 248.

Rule 56(c) places the initial burden on the moving party to identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. The movant's burden is only to point out the absence of evidence supporting the nonmovant's case. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.); *cert. denied*, 506 U.S. 832, 113 S. Ct. 98, 121 L. Ed.2d 59 (1992).

When the moving party has carried its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party bears the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, "the evidence of the

non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986). All inferences drawn from the factual record must be viewed in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. However, the nonmovant may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial. *Webb v. Cardiothoracic Surgery Assocs. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). The Court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak.*, 953 F.2d at 915-16 & n. 7. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

C. Insurable Interest

In this diversity case, the substantive issues are being governed by Texas law. A party must

6

have insurable interest in the insured property to recover under an insurance policy. *Jones v. Tex. Pac. Indem. Co.,* 853 S.W.2d 791, 793 (Tex. App.—Dallas 1993, no writ.). It is a question of law for the court to decide if an insurable interest exists. *Id.* Legal title is not required in property to have an insurable interest. *Id; see also Penn-Am. Ins. Co. v. Zertuche*, 770 F.Supp. 2d 832, 843 (W.D. Tex. 2011). An insurable interest in property exists when the insured party derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction. *Smith v. Eagle Star Ins. Co.*, 370 S.W.2d 448, 450 (Tex. 1963); *see also Jones v. Tex. Pac. Indem. Co.,* 853 S.W.2d 791, 793 (Tex. App.—Dallas 1993, no writ.); *Penn-Am. Ins. Co. v. Zertuche*, 770 F.Supp. 2d 832, 843 (W.D. Tex. 2011). Ownership of property that is intended to be a partnership asset is not determined by legal title, but by the intention of the parties reflected by the evidence. *Penn-Am.,* 770 F.Supp.2d at 843; *Foust v. Old Am. Cnty. Mut. Fire Ins. Co.,* 977 S.W.2d 783, 786 (Tex. App.—Fort Worth 1998, no pet.) (citing *Logan v. Logan*, 156 S.W.2d 507, 512 (Tex. 1941)); *King v. Evans*, 791 S.W.2d 531, 533 (Tex. App.—San Antonio 1990, writ denied).

The evidence before the court suggests that Alibi's is owned by Cahoots Entertainment, but for the use and benefit of O'Quinn and her family. In her deposition, O'Quinn testifies that she purchased the insurance policy in her name (d/b/a Alibi's) and listed herself as the owner. *See Plaintiff's Deposition* (doc# 23-7, p. 26). The evidence reflects O'Quinn and her husband's intention that ownership of Alibi's is a partnership between the two of them. O'Quinn has worked at Alibi's since its opening, made renovations and continue to maintain the property. *Id*. at 26-28. Moreover, the income of the property was the primary source of income for O'Quinn, and therefore, she derives pecuniary benefit from the continued existence of the property. As stated above, legal title is not required to prove insurable interest, and the defendant's argument that there is a lack of evidence

because O'Quinn does not have legal title is unpersuasive. This creates a fact issue and the defendant's motion for summary judgment on this issue must be denied.

### III. Discussion: Traditional Motion for Summary Judgment

A.  Traditional Motion for Summary Judgment and Related Briefs

The defendant urges plaintiff's failure to complete a condition precedent warrants an entry of summary judgment. General Star argues that O'Quinn failed to satisfy a requirement of the policy because she did not repair or rebuild the property, therefore, her failure to complete a condition precedent precludes her recovery for depreciation. *See Defendant's Traditional Motion for Summary Judgment* (doc #23, p. 1). General Star also contends that O'Quinn executed a policyholder release, which barred her from bringing certain claims arising from the fire. *Id.* General Star argues that because O'Quinn signed a release, she is excluded from further recovery. *Id.*

The plaintiff responds in opposition to the summary judgment. O'Quinn asserts that her claim is proper because she reserves the right to bring additional supplemental claims of discovered damages. *See Plaintiff's Response to Traditional Motion to Summary Judgment* (doc # 28, p. 8). Specifically, the plaintiff argues that the defendant made a mathematical calculation error of $29,042.21 and this constitutes a supplemental claim for additional damages. *Id*. at 10. Because of this error, the plaintiff contends that the defendant is in violation of Texas Insurance Code Section 542.055. *Id*. O'Quinn also alleges that because General Star has not paid the sum, General Star is in violation of Texas Insurance Code Section 542.060 and should pay a fee as well as attorney fees. *Id.* at 11. Moreover, O'Quinn argues that her failure to satisfy the condition precedent of replacing/repairing the property was unpreventable because General Star delayed its payment to O'Quinn. *Id*. at 15.

8

The defendant filed a reply in support of summary judgment. *See Reply to Plaintiff's Response to Defendant's Traditional Motion for Summary Judgment* (doc # 29). The defendant reasserts that the Policyholder Release bars O'Quinn from bringing "all claims, demands, actions, liens or causes of action of any kind whatsoever, founded in tort, common law, statute… including common law and statutory bad faith claims and claims for unfair claim settlement practices, including claims arising under the Texas Deceptive Trade Practices Act and Sections 541 and 542 of the Texas Insurance Code." *Id.* at 3. Because O'Quinn has signed this release, General Star argues that it is entitled to summary judgment on damages, contract damages and extra-contractual damages. *Id.* Moreover, the defendant argues that the $29,042.21 does not constitute damages because the losses from the property were paid in full. *Id.* at 4. General Star also contends that the plaintiff has not submitted any evidence that she has discovered additional damages and that the sum is properly being withheld because the property must be rebuilt or replaced before O'Quinn is entitled to the sum. *Id.* at 5.

B. The Release

The plaintiff is estopped from bringing forth her claims because she has waived her rights on all causes of actions by signing a policyholder release. *See Policyholder's Property Damage Release* (doc #23-5). The plaintiff signed a release stating that she releases General Star from

> "any and all claims, demands, actions, liens or causes of action of any kind whatsoever, founded in tort, common law, statute, contract or otherwise, including common law and statutory bad faith claims and claims arising under the Texas Deceptive Trade Practices Act and Sections 541 and 542 of the Insurance Code." *Id.*

Under Texas law, a release "surrenders legal rights or obligation between the parties to an agreement." *Sterling Equities, Inc. v. Chubb Custom Ins. Co.*, 806 F. Supp. 2d 1004, 1007 (S.D. Tex.

9

2011); *Dressler Indus., Inc. v. Page Petroleum Inc, et al.*, 853 S.W.2d 505, 508 (Tex. 1993). A release "operates to extinguish the claim or cause of action as effectively as would a prior judgment between the parties and is an absolute bar to any right of action on the released matter." *Dressler*, 853 S.W.2d at 508; *Sterling*, 806 F.Supp.2d at 1007. For the release to be effective, the release must 'mention' the claim to be released. *Sterling*, 806 F.Supp.2d at 1007; *see also Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991).

Under Texas law, releases are subject to the rules of contract interpretation. *Sterling*, 806 F.Supp.2d at 1007; *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). Contract terms are given their plain, ordinary and accepted meanings, and the contract should be construed as a whole in an effort to give effect to all of its provisions. *Sterling*, 806 F.Supp.2d at 1007; *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).

Ambiguities may exist, but only if the contractual language is uncertain or if it is susceptible to two or more reasonable interpretations. *Sterling*, 806 F.Supp.2d at 1007; *Grimes v. Andrews*, 997 S.W.2d 877, 882 (Tex.App.—Waco 1999, no pet.) If the parties offer differing interpretations of the contract, that alone does not create ambiguity. *Sterling*, 806 F.Supp.2d at 1007. A determination of contractual ambiguity is a matter of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Id.*; *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).

Both the defendant and the plaintiff offer differing opinions on the interpretation of the policyholder release regarding the sentence "the Claimant reserves the right to pursue a supplemental claim for additional damages, if discovered." *See Defendant's Traditional Motion for Summary Judgment* (doc. #23); *Plaintiff's Response to Defendant's Traditional Motion for Summary Judgment*

(doc. #28). The plaintiff asserts that the miscalculations, $29,042.21 and $32,995.92 respectively, constitute additional damages. However, the court disagrees and finds that the miscalculations do not fall within the meaning of "additional damages." The plain language of the release states that the plaintiff reserves the right to pursue her claim if she finds additional damages. The miscalculations are not additional damages because the plaintiff was aware of all estimates involved in the negotiation of the payment and agreed to the calculations. Moreover, it was the intention of the parties when signing the release for the plaintiff to absolve the defendant from all liability, but still retain the option to pursue claims should there be a possibility of additional damages. These calculations are not additional damages because the plaintiff was involved in the negotiations of the payments and was aware of the calculations to reach the final payment.

Furthermore, using the tools of contract interpretation, the contract releases defendants from any liability concerning the subject of the suit. The contract is not ambiguous, as it specifically states the claims the plaintiff is barred from bringing. Because the release specifically mentions the claims the plaintiff is barred from bringing, the plaintiff is prevented from bringing not only claims under the Texas Insurance Code, but also contract, negligence and good faith and dealing claims.

C. Damages Issue

Alternatively, notwithstanding the release, even if the Plaintiff asserts a claim of discrepancy of damages, the Court still has grounds to dismiss her claims on the merits. O'Quinn asserts that she is entitled to depreciation damages of $139,296.29. In order to assess whether the plaintiff is entitled to depreciation damages, the interpretation of the insurance contract will determine the result. The interpretation of an insurance contract is governed by the same rules that apply to contracts in general. *American States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998); *Cent. Mut. Ins. Co. v. White*

*Stone Prop., Ltd.*, No.A-12-CA-275-SS, 2014 U.S. Dist. LEXIS 35797, 2014 WL 1092121, at *5, (W.D. Tex. March 19, 2014). When interpreting a contract, Texas law requires that the Court strive to effectuate the intentions of the parties as expressed in the contract. *Cent. Mut. Ins. Co.,* 2014 WL 1092121 at *5; *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994); *see also Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If the policy language is unambiguous, it must be enforced. *Cent. Mut. Ins. Co.,* 2014 WL 1092121 at *5; *Upshaw v. Trinity Comps*, 842 S.W.2d 631, 633 (Tex. 1992). If the language is ambiguous, the construction that affords coverage, must be adopted. *Cent. Mut. Ins. Co.,* 2014 WL 1092121 at *5; *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1997).

The provision of the policy at issue in this case is the Replacement Cost Provision. An insured cannot recover repair or replacement costs until he or she actually repairs or replaces the insured structure. *Ghoman v. N.H. Ins. Co.*, 159 F.Supp.2d 928, 932 (N.D. Tex. 2001). An insured cannot recover repair or replacement costs in excess of what he or she actually repairs or replaces. *Id.* These well-settled principles of insurance law are only applicable where the insured seeks replacement costs. *Id.*

The Replacement Cost provision of the policy specifically states that the insured "may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage." *See Policy, Building and Personal Coverage Form, at p. 14 of 16, Exhibit 3 to Motion for Summary Judgment* (doc. #23-3). The Policy further states "we will not pay on a replacement cost basis for any loss or damage: (1)

until the lost or damaged property is actually repaired or replaced and (2) unless the repairs or replacement are made as soon as reasonably possible after the loss or damage." *See Id.*

This provision allows either the insured to either make a claim for replacement costs or actual cost supplemented by additional replacement cost coverage. The purpose of this two-step process is to enable the insured to obtain funds "to being the process of repair or replacement, at which point [the insured] could submit claims for expenditures that went beyond above the actual cash vale of the loss." *Cent. Mut. Ins. Co.*, 2014 WL 1092121, at *5, (W.D. Tex. March 19, 2014); *Ghoman*, 159 F.Supp.2d at, 933. As stated above, if the language is clear and ambiguous, the court must enforce the provision. *Cent. Mut. Ins. Co.,* 2014 WL 1092121 at *5.

O'Quinn is covered by replacement cost insurance and submitted a claim to General Star. In the Sworn Statement in Proof of Loss, the replacement cost estimate pending repair or replacement is $134, 296.29. General Star withheld the depreciation to arrive at an actual cash value of $357,211.93 and paid this amount to O'Quinn. In order to receive the depreciation estimate, O'Quinn must repair or replace the building property as specified by the provision. *See Cent. Mut. Ins. Co.,* 2014 WL 1092121 at *5 ("the insured is not entitled to recover replacement cost damages until the insured actually repairs or replaces the property"). O'Quinn has not stated nor does the record reflect that she has repaired or replaced the building. Because the provision is clear and unambiguous, the court must enforce the replacement cost provision. *See also Cent. Mut. Ins. Co.,* 2014 WL 1092121 at 6 ("court(s) have routinely enforced replacement cost provisions").

D. Negligence

Furthermore, even assuming, *arguendo*, that the plaintiff did not waive her rights to assert causes of action against the insurer in the release discussed above, summary judgment still must be

13

granted on the merits of her asserted causes of action. First, the plaintiff also asserts a claim of negligence stating that the defendant did not adjust the claim "reasonabl[y]." *See Plaintiff's Amended Petition* (doc #18, p.3). The Fifth Circuit has explicitly held that the Texas law does not recognize a cause of action for negligent claims handling. If a defendant's conduct is actionably only because it breaches the parties' agreement, the claim is solely contractual in nature. *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997). In the absence of the duty to act in good faith and deal fairly, the only duty imposed on an insurance company, under Texas law, is the duty to exercise ordinary care and prudence in considering an offer of settlement within policy limits. *Id*. In other words, Texas law does not recognize a cause of action for negligent claims handing. *Id*.; *French v. State Farm Ins. Co.*, 156 F.R.D. 159, 162 (S.D.Tex. 1994). Therefore, the plaintiff's negligence cause of action fails as a matter of law.

E. Breach of Implied Covenant of Good Faith and Fair Dealing

The plaintiff asserted breaches of implied covenant of good faith and fair dealing. Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with the insured and the process of paying claims. *Nunn v. State Farm Mut. Auto. Ins. Co.*, 729 F. Supp.2d 801, 806 (N.D. Tex. 2010); *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co*, 725 S.W.2d 165, 167 (Tex. 1987); *see also JM Walker LLC v. Acadia Ins. Co.*, 356 F. App'x. 744, 747 (5th Cir. 2009) ("an insurer breaches its common law duty of good faith and fair dealing by denying or delaying payment of a claim if the insurer knew or should have know it was reasonably clear the claim was covered"). A breach of the duty of good faith and fair dealing is established when: (1) there is an absence of a reasonable basis for denying or delaying payment of benefits under the policy and (2) the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim.

*Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995); *see also Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex.1988). The insurance carriers maintain the right to deny questionable claims without being subject to liability for an erroneous denial of the claim. *Higginbotham v. State Farm Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997). If the insurer has a reasonable basis for denying or delaying payment of a claim, even if the basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith. *Higginbotham,* 103 F.3d at 459; see also *Lyons v. Millers Cas. Ins. O.,* 866 S.W.2d 597, 600 (Tex. 1993).

In most instances, an insured cannot maintain a common law bad faith claim where the breach of contract claim fails. *Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co*., 906 F.Supp.2d 642, 649 (S.D. Tex. 2012); *Blum Furniture Co. v. Certain Underwriters at Lloyds London*, No. H-09-3479, 2011 U.S. Dist. LEXIS 20604, 2011 WL 819491, at *3 (citing *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Toonen v. United Svcs. Auto. Ass'n*, 935 S.W.2d 937, 941 (Tex.App.—San Antonio 1996, no writ.)). The only recognized exception pertains to when the insurer "commit[s] some act, so extreme, that would cause injury independent of policy claim, or fails to timely investigate the insured's claim." *Stoker*, 903 S.W.2d at 341.

As previously stated above, the plaintiff must prove that there is an unreasonable basis for denial or delay of the payment of benefits and the carrier knew or should have known that there was no reasonable basis for the denying or delaying payment. *See Stoker*, 901 S.W.3d at 340. The plaintiff alleges that the calculations were all "unreasonably and without proper cause." *See Amended Petition,* at p. 4. The defendant asserts that the all damages were "identified, inventoried, valued and paid." *See Defendant's Motion for Summary Judgment,* .at p. 12. The plaintiff must show that the defendant's denial was unreasonable. Plaintiff also argues that the defendant was delayed in making

15

the payments and, therefore, her lease was terminated. The plaintiff also admits that there were "other reasons concerning disputes between O'Quinn and the landlord of the Alibi's premises." *See Plaintiff's Response to Defendant's Traditional Motion for Summary Judgment* (doc # 28, p. 2)

The only evidence plaintiff provides for the court in support of her bad faith claim is the calculations. The plaintiff does not submit any other evidence to show how these claims are unreasonable or that the defendant should have known that the denial was unreasonable. This falls short of the requisite standard. In addition, the defendant asserts that it provided $72,000 in advance and then the full payment. *See Defendant's Traditional Motion for Summary Judgment* (doc #23, p.6).

Furthermore, if the calculations were unreasonable, the plaintiff's insurance policy contains an appraisal provision that gives the insurer the opportunity to make a written demand if the insurer disagrees with value of the property or amount of loss. *See Policyholder's Building and Personal Property Coverage Form* (doc #23-3, p.9). The plaintiff at any time could have disagreed and negotiated with the price, but she accepted the award. Because the plaintiff did not provide any evidence to support the allegation that the defendant's calculations were unreasonable, the defendant's motion for summary judgment on the bad faith claims is granted.

F.  Violation of Texas Insurance Code

In addition, the plaintiff also asserts that the defendant violated the Texas Insurance Code Sections 542.055, 542.056 and 542.060. In Texas, an individual who has been damaged by "unfair methods of competition or deceptive acts or practices in the business insurance" may bring a statutory cause of action under the Texas Insurance Code against the person or persons engaging in such acts or practices." *Douglas v. State Farm Lloyds*, 37 F. Supp. 2d 532, 544 (S.D. Tex. 1999). Texas law holds that extra-contractual tort claims pursuant to Texas Insurance Code and the Deceptive Trade

16

Practice Act require the same predicate for recovery as bad faith causes of action. *Douglas* 37 F. Supp. 2d, at 544; *Lawson v. Potomac Ins. Co.*, No. Civ. 398-CV-0692H, 1998 U.S. Dist. LEXIS 14769, 1998 WL 641809, at *4 (N.D. Sept. 14, 1998) (citing *Higginbotham v. State Farm Mut. Auto. Co.*, 103 F.3d. 460, 463 (5th Cir. 1997)). In order to establish a statutory violation under the Insurance Code, the elements necessary to demonstrate an insurer's breach of the common law duty of good faith and fair dealing must be proven. *See Douglas* 37 F. Supp. 2d at 544; *Higginbotham* at 103 F.3d at 460; *Lawson*, 1998 WL 642809 at *4. When an insured joins claims under the Texas Insurance Code and DPTA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either statutory claims. *See Higginbotham*, 103 F.3d at 460; *see also Beaumont Rice Mill, Inc. v. Mid-American Indem. Ins. Co.*, 948 F.2d 950, 952 (5th Cir. 1991); *State Farm Fire & Cas. Co. v. Woods*, 925 F. Supp. 1174, 1180 (E.D. Tex. 1996). Because the plaintiff did not show an absence of a reasonable basis on the bad faith claim, as a matter of law, the plaintiff's claims under the Texas Insurance Code must also fail as a matter of law.

### IV. Conclusion and Order of the Court

Based upon the findings and legal conclusions stated herein, the undersigned United States Magistrate Judge concludes that the plaintiff has established a genuine issue of material fact regarding the No-Evidence Motion for Summary Judgment. Therefore, the court **ORDERS** that the No-Evidence Motion for Summary Judgment (doc. #17) is **DENIED**.

However, the Court further concludes that the Defendant has established that no genuine issue of material fact exists as to any of the causes of action asserted against the Defendant because the Plaintiff signed a release legally waiving her right to bring causes of action against the Defendant.

Alternatively, the Court also finds that the Defendant has established that no issue of genuine material fact exists on any of the necessary substantive elements needed to prove the Plaintiff's negligence, bad faith, and Texas Insurance Code claims. Summary Judgment is therefore proper on these causes of action for this reason, in addition to the effect of the release.

It is therefore **ORDERED** that the *Traditional Motion for Summary Judgment* (doc. #23) is **GRANTED**. Accordingly, the Court **ORDERS** that all claims asserted by the Plaintiff against the Defendant be dismissed in their entirety, with prejudice. The Court will enter judgment in favor the Defendant by separate order.

**SIGNED this the 5th day of August, 2014.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE